**In re Keith Michael CONROY, Debtor.**

**Bankruptcy No. 89–41201–007.**

United States Bankruptcy Court,
D. Montana.

Jan. 31, 1990.

Craig R. Buehler, Lewistown, Mont., for debtor.

Neal G. Jensen, Asst. U.S. Trustee, Great Falls, Mont.

Gary S. Deschenes, Great Falls, Mont., for trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case, the Trustee has filed an objection to the Claim of exemption by the Debtor in a Montana Power Company stock retirement account owned by the Debtor, or his beneficiary. The matter has been submitted to the Court by memorandum filed by the parties.

Debtor claims as exempt under Section 31–2–106(3), Mont.Code Ann. and 11 U.S.C. Section 522(b)(2)(A),[1] shares of the stock held in Debtor's account under an "Employee Stock Ownership Plan" (ESOP). Under the ESOP, the company makes a contribution to the trust for the benefit of the employee in the form of purchase of company common stock and other securities. The employee has the right under the

---

1. Debtor's amendment to schedule B–4 only included a claim for exemption under the Montana Code, but both parties have raised the issue as to whether the Debtor is entitled to the exemption under federal law, so that I deem the claim for the exemption to include § 522(b)(2)(A).

494

plan to make a matching contribution. Schedule B–4 of Debtor's petition shows the Debtor's ESOP account consists of 57.-2104 shares of Montana Power Company stock, $5163.23 of other securities and unmatched funds of $177.32, for a total value of $15,530.40. As this Court reads the schedule, the company contributions total $15,353.08. The member becomes vested in the account, and with one exception is entitled to receive the shares of stock "only at such time as he ceases to be an employee, whether by reason of retirement, death, disability or other termination of employment with the company, or by reason of Plan termination * * *." The exception for transfer of the stock interest is that the employee may withdraw all of his account with the consent of the committee which administers the funds "upon a showing by the member to the committee of a financial need for such withdrawal to meet an unusual or specific situation in his financial affairs * * *." It is conceded by the Debtor that he had borrowed and repaid loans from his account in the Plan for his financial needs. The ESOP trust agreement specifically makes reference to the Employee Retirement Income Security Act of 1974 (ERISA), which is codified in 29 U.S.C. §§ 1001 et seq. and the Internal Revenue Code (I.R.C.), codified in 26 U.S.C. §§ 1 et seq. In order that the Plan is qualified under ERISA, as will be explained later in this opinion, the Plan contains the following provision, commonly known as an anti-alienation clause, to-wit:

"Section 11.2. *Inalienability of benefits.*

Except as otherwise provided by law or the issuance of a qualified domestic relations order (within the meaning of Section 206(d), or such successor Section of ERISA), no person shall have the right to assign, alienate, transfer, hypothecate or otherwise subject to lien his interest in or his benefit under the plan; nor shall benefits under the plan be subject the claims of any creditor."

The applicable Montana law, as amended in 1989 (effective March 7, 1989), provides in Section 31–2–106, Mont.Code Ann.:

"No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. 522(d). An individual may exempt from the property of the estate in any bankruptcy proceeding:

\* \* \* \* \* \*

(3) the individual's right to receive benefits from or interest in a private or governmental retirement, pension, stock bonus, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, excluding that portion of contributions made by the individual within 1 year before the filing of the petition in bankruptcy which exceeds 15% of the individual's gross income for that 1–year period, unless:

(a) the plan or contract was established by or under the auspices of an insider that employed the individual at the time the individual's rights under the plan or contract arose;

(b) the benefit is paid on account of age or length of service; and

(c) the plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(b), 408 or 409)."

The parties agree that the Montana Power Company ESOP is a qualified plan under ERISA and Internal Revenue Code Section 401.

The Trustee contends that the above Montana exemption statute as to private pension plans has been pre-exempted by ERISA and no exemption under the Montana law is available to the Debtor. The Trustee also contends, contrary to Debtor's contention, that the Debtor's account is property of the estate under § 541 of the Bankruptcy Code and there is likewise no federal exemption available to the Debtor under Section 522(b)(2)(A).

A. Does ERISA pre-empt the state allowed exemption under Section 31–2–106(3)?

■ ERISA was adopted in 1974. Before that time, the United States experi-

enced a rapid growth in private employee benefit plans funded by employers and employees. To correct the perceived inadequacies of many benefits plans, prevent employer abuses, and assure stability of benefits, Congress enacted ERISA, basically as a labor law, but with preferential tax treatment for employers and employees. 29 U.S.C. § 1001(a).

Under ERISA's general provisions, the primary policy was to protect the interests of participants and their beneficiaries in employee benefit plans by (1) requiring certain financial disclosures of information; (2) establishing minimum standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans; and (3) providing for appropriate remedies, sanctions and ready access to the federal courts. 29 U.S.C. § 1001(b). ERISA covers two basic types of "plans" an employer may establish for its employees, namely (1) the "employee benefit plan", also called a pension plan, which purpose is to provide for retirement income, being the type of plan under consideration in this case and (2) a "welfare benefit plan" which generally provides for health, legal, vacation or training benefits. The Montana exemption statute above set forth provides an exemption only for the employee benefit plan, and does not provide an exemption from claims of creditors to a "welfare benefit plan".

ERISA contains four separate titles, of which two, Titles III and IV, are not pertinent to the issues in this case. Title I contains definition sections and defines the limits for the statute's coverage. Title II is composed almost entirely of amendments to the Internal Revenue Code of 1986 (as amended) (Title 26). Accordingly, a "qualified plan" under ERISA is synonymous with a "tax-qualified plan" or a plan satisfying certain provisions of the I.R.C. as set forth in Title II, which grants tax benefits to the employer and the employee. Section 31-2-106(3), like Title II of ERISA, specifically references § 26 U.S.C. § 401(a), which is the basic I.R.C. provision for pension plans granting tax benefits, which include the right of an employer to deduct contributions to the plan in the year of contribution, even though the employee may receive no benefits that year, exempting from taxation earnings and gains on plan funds during the period of accumulation, and providing special tax treatment to employees or participants when they receive the benefits. As one court has recently noted, however,

"ERISA is primarily and originally a labor statute, whose principle intended beneficiaries are not the employers who may enjoy the benefits from setting up such plans, but employees and their dependents.

* * * The tax benefit is the carrot. The civil and criminal enforcement mechanisms (of ERISA) are the stick." *In re Komet,* 104 B.R. 799, 803–04 (Bankr.W. D.Tex.1989).

In order to satisfy the requirement of Title I of ERISA, and to qualify for the tax advantages of qualification under the I.R.C., a pension plan must contain certain anti-alienation and anti-assignment provisions that protect the pension plan benefits from creditors of the plan participants. § 206(d)(1) of ERISA provides:

"Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated" 29 U.S.C. § 1056(d).

Failure to include such provision in a plan may result in criminal sanctions. *Komet,* supra, at 809. Section 401(a)(13) of the I.R.C. provides for the same requirement for tax qualification. In a non-bankruptcy context, courts have held that the effect of the anti-alienation, anti-assignment provision of ERISA are to protect an employee's accrued benefits under a qualified pension plan from his third party creditors. *Smith v. Mirman,* 749 F.2d 181, 183 (4th Cir. 1984); *Tenneco, Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688, 689–90 (4th Cir.1983).[2] The Trustee under Section 544 of the Bankruptcy Code holds the status of a hypothetical judgment lien credi-

---

**2.** Conversely, welfare benefits plans have no restrictions on alienation or assignability under ERISA, and are not protected from the reach of creditors. *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374, 1376–77 (9th Cir.1986).

tor, *In re Gurs*, 27 B.R. 163 (9th Cir.BAP 1983), and by analogy, it is argued the Congressional intent under ERISA was to protect a pension plan from the Trustee's grasp.

We now come to the provision of ERISA which determines the first question in this case. Section 514(a) of ERISA (29 U.S.C. § 1144(a)) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan as described in Section 1003(a) of the title and not exempt under Section 1003(b) of this title."

This code section greatly expands the ultimate protection of ERISA by preventing inconsistent and contrary state exemptions laws, or other state statutes from altering the protections of ERISA. The seminal case in this area is *Mackey v. Lanier Collection Agency and Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey*, a Georgia statute prohibited the garnishment of funds or benefits of ERISA welfare benefit plans, when ERISA permitted such garnishment, as above noted. While it is acknowledged that *Mackey* dealt with a welfare benefit plan, i.e., vacation benefits, the language of *Mackey* is so sweeping and broad that it is conclusive to the issue before the Court. *Mackey* held:

"A law 'relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or *reference* to such a plan'. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97 [103 S.Ct. 2890, 2900, 77 L.Ed.2d 490] (1983) (emphasis added). On several occasions since our decision in *Shaw*, we have reaffirmed this rule, concluding that state laws which make 'reference to' ERISA plans are laws that 'relate to' these plans within the meaning of Section 514(a). *See, e.g. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. [41, 107 S.Ct. 1549, 95 L.Ed.2d 39] (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 [105 S.Ct. 2380, 2388, 85 L.Ed.2d 728] (1985). In fact, we have virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under Section 514(a). Cf. *Pilot Life Ins. Co. v. Dedeaux*, supra, [481 U.S.] at [47–48, 107 S.Ct. at 1553]; *Shaw v. Delta Air Lines, Inc.*, supra, [463 U.S.] at 98 [103 S.Ct. at 2900]."

The Trustee argues that the Montana statute, 31–2–106(3) is pre-empted by ERISA because it makes reference to a provision in Title II of ERISA (Section 401 of I.R.C.) and therefore it plainly relates to ERISA. Certainly, it is unquestioned the Montana Power Company Plan is an ERISA qualified plan. I hold that when Section 31–2–106(3) exempts from the bankruptcy estate, retirement or pension benefits which are tax exempt under I.R.C. § 401, it makes reference to, and therefore relates to ERISA, and by reason thereof, Section 31–2–106(3) is pre-empted by ERISA under the holding of *Mackey*.

The majority of courts which have been presented with this issue have likewise concluded that when a state has an ERISA pension plan exemption, and the state has opted out of the federal exemption of § 522(d), as has Montana in Section 31–2–106, the *Mackey* decision compels the result that the state created exemption is void because it has been pre-empted. *In re Hirsch*, 98 B.R. 1 (Bankr.Ariz.1988), aff'd., *In re Seigel* and *In re Hirsch*, 105 B.R. 556 (D.Ariz.1989); *In re Komet* supra; *In re Sellers*, 107 B.R. 152 (Bankr.E.D.Tenn. 1989); *In re Alagna*, 107 B.R. 301 (Bankr. Colo.1989); *In re Burns*, 108 B.R. 308 (Bankr.W.D.Okla.1989); *In re Brown*, 95 B.R. 216 (Bankr.N.D.Okla.1989); *In re Dyke*, 99 B.R. 343 (Bankr.S.D.Tex.1989); *In re McLeod*, 102 B.R. 60 (Bankr.S.D. Miss.1989). *Contra: In re Martinez*, 107 B.R. 378 (Bankr.S.D.Fla.1989); *In re Volpe*, 100 B.R. 840 (Bankr.W.D.Tex.1989); *In re Seilkop*, 107 B.R. 776 (Bankr.S.D.Fla. 1989). Moreover, as noted in *In re Seigel*, supra, at 563, one does not have to find the Montana law in conflict with ERISA in order for the doctrine of pre-emption to apply, as was held in *Volpe*, supra.

"Appellants also contend that ERISA preemption only applies to state laws which are in conflict with ERISA. This contention is in conflict with the statements of the Supreme Court in *Mackey* and *Metropolitan Life* that 'the pre-exemption provision [of § 514(a) ] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements' *Mackey,* 486 U.S. at [829], 108 S.Ct. at 2185, quoting *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2389, and referring to *Shaw,* 463 U.S. at 97, N. 15, 103 S.Ct. at 2900, N. 15. The argument assumes that preemption cannot occur unless there is a conflict with federal law. * * * However, when Congress preempts a field, the mere existence of a state law relating to regulation of that field is a conflict. Congress intended uniform regulation of employee benefits plans. Any state statute that 'relates to' a plan so as to provide regulation of ERISA is preempted under prior Supreme Court decisions."

Moreover, in the case *sub judice,* if it were necessary to find a conflict, the matter is easily resolved. The Montana statute provides that payments made in one year before filing bankruptcy which exceed 15% of the individual's gross annual income are *not* exempt, and therefore are subject to attachment or levy. Such provision flys directly in the face of the anti-alienation provision of ERISA § 206(d), which mandates that *all* plan benefits may not be alienated. Thus, there is additional reason to hold the Montana exemption statute void as being in conflict with ERISA. Congress could not have achieved the national uniformity it sought in ERISA if the efficacy of the anti-alienation provision turned on the vagaries of a myriad of state laws. As held in *Komet,* supra:

"Instead, it is the fact that the anti-alienation language is mandated by federal regulation of private employees pension benefit plans that renders those plans

exempt from state law creditor remedies. (Citing cases)." *Id.* at 808.

Montana, as well as other opt-out states, have thus created a plight for bankruptcy debtors. In Montana, there is no recourse for the Debtor to the federal exemptions allowed under § 522(d), which section includes an exemption of ERISA pension plan benefits as are necessary for the support of Debtor and family. § 522(d)(10)(E). As such, once the state private pension plan exemption is voided, the exemption is simply gone, unless the plan benefits are saved under Section 541(c)(2) or Section 522(b)(2)(A). I now turn to those two bankruptcy provisions.

B. Is this exemption allowable under Section 522(b)(2)(A) of the bankruptcy Code?

Section 522(b)(2)(A) provides:

"Notwithstanding Section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or in the alternative, paragraph (2) of this subsection. * * * Such property is— * * * (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section * * *"

Debtors in an opt-out state such as Montana may thus look to § 522(b)(2)(A) to assert a valid exemption, either by way of a state exemption or any non-bankruptcy federal exemption. The law in this Circuit on this issue is stated in the decision of *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). *Daniel* involved a self-settled profit sharing trust, qualified under ERISA and the I.R.C. The precise issue in *Daniel* was whether the Debtor was entitled to claim an exemption under § 522(b)(2)(A). *Daniel* followed the cases of *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Graham,* 726 F.2d 1268 (8th Cir.1984), and *In re Goff,* 706 F.2d 574 (5th Cir.1983).[3] *Daniel* held:

---

**3.** As to the *Goff* decision, that case reveals that the Court's discussion of § 522(b)(2)(A) is dicta. The Debtor, Goff, made a state election of exemption and did not attempt to claim exemp-

tion of their ERISA–Qualified Keogh Plans under § 522(b)(2)(A), so that the applicability of such federal exemption was not involved in the appeal. *Goff,* supra at 582. *Komet,* supra,

"The *Lichstrahl* court also focused its examination on whether I.R.C. and ERISA approved plans could be exempted pursuant to 11 U.S.C. § 522 (1982). As concluded in *Lichstrahl* at 1491:

'We agree with the Fifth Circuit that Congress did not intend to exempt such plans under this section. *See Matter of Goff*, 706 F.2d 574, 585 (5th Cir.1983); *Matter of Turpin*, 644 F.2d 472, 474 n. 1 (5th Cir.1981) (dicta).

The House and Senate reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws. ERISA-qualified pension plans are not included. Although Congress may not have intended the list to be exhaustive, the failure to include ERISA is nonetheless indicative of congressional intent. Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *Matter of Goff*, 706 F.2d at 585; *see also In re Graham*, 726 F.2d 1268, 1274 (8th Cir. 1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Code. Of particular importance is ERISA's inclusion within the alternative federal exemptions listed in § 522(d). The failure to mention ERISA in connection with § 522(b) was intentional. *Matter of Goff*, 706 F.2d at 585.

Furthermore, excluding ERISA-qualified pension plans from the list of property exempted under federal law is consistent with an important distinction between exempted property and property covered by ERISA. Despite the similarity between the anti-alienation provisions of ERISA and some of the listed statutes, the "pensions, wages, benefits and payments included in the ... list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems." *In re Graham*, 726 F.2d at 1274. It is this "peculiarly federal nature" shared by the cited statutes that identifies and determines which federal statutes are to be included within the "other federal law" exemption of § 522 and which, like ERISA, are to be excluded. *See Matter of Goff*, 706 F.2d at 586. The failure to mention ERISA in the legislative history accompanying § 522(b)(2)(A) is, therefore, both purposeful and reasoned.' [Footnote omitted]

\*   \*   \*   \*   \*   \*

Although there are a few Bankruptcy Court decisions outside this Circuit to the contrary, the holdings of our sister circuits in *Goff, Graham,* and *Lichstrahl* are controlling and should be adopted by this Circuit. Thus, pursuant to the solid weight of authority of *Goff* and its progeny, we hold that the anti-alienation provisions of ERISA and the Internal Revenue Code do not create Federal non-bankruptcy exemptions for ERISA qualified plans under 11 U.S.C. § 522(b)(2)(A)." *Id.* at 1360–61.

The Court's reliance on *Lichstrahl,* supra, which in turn relied on *Goff,* supra, was a conscious choice to reject other precedent holding that ERISA is a federal exemption statute under § 522(b)(2)(A). *See, e.g. Barr v. Hinshaw, (In re Hinshaw),* 23 B.R. 233 (Bankr.Kan.1982). Two recent bankruptcy courts, one sitting *en banc,* have rejected the *Daniel, Goff,* and *Lichstrahl* analysis and determined that ERISA qualified plans may be exempted from the bankruptcy estate under § 522(b)(2)(A). *In re Burns,* 108 B.R. 308 (Bankr.W.D.Okl.1989) and *In re Komet,* 104 B.R. 799 (Bankr.W. D.Tex.1989). If I were writing on clean slate, I would find the rationale of *Burns* and *Komet* more persuasive. However, I feel bound to follow the *Daniel* holding under the doctrine of stare decisis [4] be-

---

makes much of the fact that Goff was "strong dicta". *Id.* at 808.

**4.** The determination of a point of law by a court will generally be followed by court of the same or lower rank if a subsequent case presents the

cause the Circuit court did have an opportunity to examine the issues surrounding § 522(b)(2)(A), and specifically concluded that the ERISA statute was not a federal exemption statute within such subsection of the bankruptcy Code. Accordingly, Section 522(b)(2)(A) is not available as an exemption to the Debtor.

C. Is Debtor's interest in ESOP protected by Section 541(c)(2) of the Bankruptcy Code?

■ The third issue addressed in the Trustee's objections concerns whether the Debtor's interest in the ESOP program of his employer constitutes a spendthrift trust so as to place the property beyond the reach of the Trustee. *Daniel*, supra, and *In re Kincaid*, 96 B.R. 1014 (9th Cir.BAP 1989) give incite to this issue. Section 541(c)(2) excludes from property of the estate property which contains—

> "A restriction on the transfer of a beneficial interest of the Debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

*Daniel* explains 541(c)(2) as follows, citing *In re Lichstrahl*, supra:

> " 'Relying primarily on legislative history, courts have generally interpretated the section's reference to "applicable non-bankruptcy law" as a applying *only to state law* concerning spendthrift trust. See, e.g., *Matter of Goff*, 706 F.2d 574 (5th Cir.1983); *see also In re Graham*, 726 F.2d 1268 (8th Cir.1984); [further citations omitted]. *But see In re Pruitt*, 30 B.R. 330 (Bankr.D.Colo.1983).'

\*   \*   \*   \*   \*   \*

Thus, following the *Goff, Graham* and *Lichstrahl* cases, this court holds the phrase '*applicable non-bankruptcy law*' in 11 U.S.C. § 541(c)(2) was intended to be a narrow reference to *state* 'spendthrift trust' law and not a broad reference to *all* other laws, including ERISA and IRC, which prohibit alienation.

Therefore, the ERISA and IRC anti-alienation provisions in debtors pension and profit sharing plan does not create a Federal non-bankruptcy exclusion under 11 U.S.C. § 541(c)(2)." *Id.* at 1360.

*Kincaid*, supra, following *Daniel*, concludes:

> "Accordingly, ERISA-qualified pension plans containing anti-alienation provisions are excluded pursuant to § 541(c)(2) only if they are enforceable under state law as spendthrift trusts. *Daniel*, 771 F.2d at 1360. (quoting *Lichstrahl*, 750 F.2d at 1489–90)."

In *Kincaid*, the Trustee sought turnover only of the monies made to her employees trust from the debtor's contributions, and not the matching contributions of the employer. *Id.* at 1019. *Kincaid* held:

> "In light of the strong common law prohibition against self-settled spendthrift trusts, courts have overwhelmingly held that a debtor's *voluntary* contributions to a plan or trust are property of the estate. *See, e.g., In re Sanders*, 89 B.R. 266, 270 (Bankr.S.D.Ga.1988) (to extent that debtor's contributions make up corpus of trust, he is settlor of trust); *In re Swanson*, 79 B.R. 422, 426 (Bankr.D. Minn.1987) (emphasizing the importance of distinguishing between employer's and employee's contributions to trust); *Cates*, 73 B.R. at 876 (plan funded by voluntary salary deferrals is self-settled); *In re Monahan*, 68 B.R. 997, 1000 (Bankr.S.D.Fla.1987) (only funds voluntarily contributed by debtor are property of estate); *In re Wallace*, 66 B.R. 834, 841 (Bankr.E.D.Mo.1986) (voluntary contributions to trust defeat its spendthrift characteristics); [In re] *Pettit*, 61 B.R. [341] at 346 [ (Bankr.W.D.Wash.1986) ] (plan not spendthrift trust where funded mainly by debtor and may be invaded by debtor); *In re Berndt*, 34 B.R. 515, 517 (Bankr.N.D.Ind.1983) (employer's contributions to plan excluded but employee's

same legal problem, although different parties are involved in the subsequent case. *Hertz v. Woodman*, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910). This is particularly true when the decision is long standing, has not produced any

particularly unfortunate consequences and Congress, which could easily change the rule, has not seen fit to intervene. *Canada Packers, Ltd. v. Atchison, T. & S.F. R.R. Co.*, 385 U.S. 182, 87 S.Ct. 359, 17 L.Ed.2d 281 (1966).

own funds were property of the estate); *In re Werner*, 31 B.R. 418, 421 (Bankr.D. Minn.1983).

The fact that John Hancock established and designed the trust in this case does not make John Hancock the settlor of the trust. As noted by the court in *Cates*, '[o]ne who furnishes the consideration (res) necessary for the creation of the trust is the settlor of the trust.' *Id.* 73 B.R. at 876 (quoting Bogert, *The Law of Trusts and Trustees*, § 41, pp. 428–429 (Rev.2d Ed.1984)). The critical factor is not whether a debtor designs the specifics of a particular plan, but whether he chooses to participate, thereby adopting the plan as his own. *Sanders*, 89 B.R. at 270. To the extent that the Debtor in the instant case voluntarily contributed to the corpus of the Plan, she is the settlor of the Plan and the Plan is invalid under either Oregon or Massachusetts law. Accordingly, we affirm the bankruptcy court's holding that the $2,375.70 voluntarily contributed by the Debtor to the Plan is property of the estate pursuant to 11 U.S.C. § 541(a)." *Id.* at 1019.

This Court in *In re Anderson*, 3 Mont. B.R. 192, 198 (Bankr.Mont.1986), in analysizing the Debtor's interest in a public retirement account as a spendthrift trust noted:

"Just recently, Montana recognized the validity of spendthrift trust in *Lundgren v. Hoglund*, [219] Mont. [295], 711 P.2d 809 (1985), on the basis that such trusts are upheld on two policy grounds, first, that 'the intention of the testator, as far as possible should be given effect by the courts', and second, 'because the creditor has no reason to rely on assets or income form a spendthrift trust'. *Lundgren*, of course, presented a factual setting dealing with the creation of a 'traditional' spendthrift trust by a private writing which involved a provision that 'no interest of any beneficiary of any trust created hereunder shall be subject to sale, assignment, pledge or transfer by any beneficiary in any form or manner whatsoever, nor shall the principal of the trust or the income arising therefrom be liable for any debt of or any judgment against any beneficiary through due process of any court'. A like provision in an ERISA trust was held to insulate that trust fund from property of the estate under Section 541 as being in the nature of a spendthrift trust under 541(c)(2). *McLean v. Central States Southeast & Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir.1985) (contributions to the Central Fund are made only by employers and the employees have no power to revoke the trust and reach its corpus)."

The Trustee cites an authority for his position the case of *In re Sheppard*, 106 B.R. 724 (Bankr.M.D.Fla.1989), where the court had under consideration an ERISA employee Thrift Plan of the Debtor's employer, Florida Power and Light Company. Under that thrift or savings plan, the employee contributed 1% to 16% of their pay with some matching contribution by the company. The purpose of the plan was for the employee to save over a long period of time, but if the employee's employment terminates before retirement, death or age 70, the employee receives only his vested contributions in the plan. In *Sheppard*, the Debtors used the funds to purchase company stock. The court held the Florida pension exemption statute was pre-empted by ERISA and that ERISA plan funds are not spendthrift trusts under § 541(c)(2), citing as authority *In re Goff*, supra, *In re Graham*, supra, and *Reagan v. Ross*, 691 F.2d 81 (2nd Cir.1982). As can be seen from the *Sheppard* case, it varies significantly from *In re Kincaid*, where the company contributions were conceded to be within the definition of a spendthrift trust, since only the Debtor's voluntary payments into the ERISA plan became property of the estate.

■ In the case *sub judice*, the Debtor's contributions into ESOP total $177.32, with the balance of its funds contributed by the company. In addition, the Debtor's right to borrow the vested funds is seriously curtailed by the provision which requires financial hardship and approval by the trust. The fact that a beneficiary may borrow from the trust does not necessarily invalidate a spendthrift clause. This a particularly true where the Trustee is not obli-

gated to make the loan. *In re West,* 81 B.R. 22, 25 (9th Cir.BAP 1987). In *West,* the Debtor was not a director or officer of the corporation, and he was not a trustee of the plan. Other than the shares he acquired through the plan, he had no interest in the corporation and his only interests were the contributions by his employer. The plan was held to qualify as a spendthrift trust under applicable state law. For a contrary result, based on the ability to control the trust funds see *In re Kaplan,* 97 B.R. 572, 577 (9th Cir.BAP 1989), where the Debtor was self-settlor, beneficiary and trustee. *Kaplan* held:

"The primary consideration in determining whether a trust qualifies as a spendthrift trust is the debtor's degree of control over his trust * * *" *Id.* at 577.

Consequently, as held in *Kincaid,* it is only to the extent of the Debtor's contributions, that the Debtor becomes the settlor of the trust, and such investment is property of the estate. As to the balance of the ESOP account contributed by the company, the plan satisfies the elements of a traditional spendthrift trust since it is not self-settled and control or dominion is not left in the debtor. As a result, company contributions are excluded from the estate under § 541(c)(2). I hold, therefore, that Debtor's interest in the Montana power Company ESOP in the sum of $15,353.08 is not property of the estate and the Debtor must pay over to the Trustee the sum of $177.32. I believe this result comports with the purpose of ERISA and the aborted Montana pension exemption which provides for protection against third party creditor's claims of pension benefits, thereby giving the Debtor a fresh start from his bankruptcy plight.

IT IS ORDERED the Trustee's objections to the claim of exemption by the Debtor in the Montana Power Company Employee Stock Option Plan is sustained to the extent of $177.23, and denied as to the balance of such funds under Section 541(c)(2).