**In re Ronald H. ULLMAN, Debtor.**

**Bankruptcy No. 89–40480–007.**

United States Bankruptcy Court,
D. Montana.

July 13, 1990.

---

Joel E. Guthals, Wright, Tolliver & Guthals, P.C., Billings, Mont., for debtors.

Victoria Francis, Billings, Mont., Trustee.

Edward A. Murphy, Datsopoulos, MacDonald & Lind, Missoula, Mont., for Compass Group.

Arthur G. Matteucci, Matteucci & Falcon, Great Falls, Mont., for First Interstate Bank of Great Falls.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case, hearing on Objections filed by the Trustee, Compass Group, and First Interstate Bank of Great Falls, Montana, to the claim of exemptions by Debtor was held on April 26, 1990. The parties have submitted Briefs in support of their respective positions and the matter is now ready for decision. At the conclusion of the hearing, the Court by bench ruling denied the objections to the claim of homestead at Coopers Lake, Montana, being the principal residence of the Debtor and sustained the Trustee's objections to household goods and furnishings where values exceed the statutory limits set forth in Section 25–13–609(1), Mont.Code Ann., on the authority of *In re Welnel*, 1990 WL 223272, 7 Mont.B.R. 29 (Bankr.Mont.1989). The remaining objection to exemption is to the corporate retirement plan valued at $402,570.00 claimed under Section 31–2–106(3) Mont.Code Ann. This Order addresses the issues raised to the retirement plan.

The facts are undisputed. The Debtor is the sole stockholder, director and officer of Ronald H. Ullman, M.D. P.C., a Montana professional corporation. The corporation established two qualified plans in 1976—a profit sharing plan and pension plan. At all times, the Debtor was trustee of both plans. In 1985, due to changes in federal tax laws, the plans were re-stated so that the profit-sharing plan was "rolled over"

into a single pension trust plan of which the Debtor remained as trustee and one Philip Bird was appointed as plan administrator. The plan requires zero contribution from the corporation, but each participant, of which there are only two members, has the right to contribute to the pension trust. The two remaining participants with fund balances are the Debtor, with a fund balance of $332,527.00 and another employee, whose fund balance is $135.75. The corporation has made no contribution to the plan since 1985, so that the plan is curtailed. While the plan lists 14 active participants, only two have account balances, since the other participants are no longer employees of the corporation.

Since the beginning of the plan, the Debtor borrowed $229,000.00, which he paid down to $143,000.00 and that amount is an asset of the plan. In August, 1983, a change in the Internal Revenue Code (I.R.C.) prohibited loans in excess of $50,-000.00, so that Debtor declared $93,000.00 of the debt as ordinary income and paid a 10% excise tax on that amount. Nevertheless, the balance on the loan of $143,000.00 plus interest is still due the trust.

The parties have differing views on the plan administrator duties and obligations, and how such duties affect control of the plan. Those factual matters will be addressed later in this decision on the issue of whether the plan qualifies as a spendthrift trust. The pension is a qualified plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. and the Internal Revenue Code, 26 U.S.C. §§ 1 et seq. since it contains a clause against the inalienability of the plan funds by participants.

Article VIII of the plan provides:
"SPENDTHRIFT PROVISION—
Except as to the power to designate beneficiaries as hereinbefore provided, no participant nor any beneficiary of a deceased participant shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his account or interest in the plan prior to the actual distribution thereof to such participant or such beneficiary by

the Trustee. The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestics relations order, unless such order is determined to be a qualified domestic relations order, as defined in Section 414(p) of the Code, or any domestic relations order entered before January 1, 1985."

As to corporate contributions, plan participants are entitled to distributions of their account balance only upon retirement at age 60 (or 59½ to a "key employee"), death or disability. As a result, the plan prohibits the Debtor as a plan participant or the trustee from withdrawing any funds until the requirements of distribution are satisfied. The Debtor, as a "key employee" under the plan, cannot withdraw nor is he eligible to receive any benefits in the form of distribution until his retirement at age 59½, death or disability. If an employee terminates employment with the corporation, his account is left intact until a qualifying event for distribution.

Employee contributions, of which there are none in the plan, may be withdrawn at the request of the employee, except a key employee. As explained by counsel who prepared and qualified the plan, the Debtor in his capacity as trustee, shareholder or officer of the corporation, or as plan participant cannot invade the corpus of the trust prior to retirement, death or disability. Clearly, none of these events have been satisfied as of the petition date.

This Court's decision of *In re Conroy*, 110 B.R. 492 (Bankr.Mont.1990), governs two of the issues in this case. *Conroy* held that the Montana exemption statute relied upon by the Debtor, Section 31–2–106(3),

has been pre-empted by ERISA, so that it cannot be utilized by a Debtor as an exemption in a bankruptcy case, *Id.* at 497,[1] and that the Debtor is not entitled to rely on Section 522(b)(2)(A) of the bankruptcy Code to claim an exemption on the pension trust. *Id.* at 497–499. The third issue in the case *sub judice* involves whether the Ullman pension trust qualifies as a spendthrift trust under Montana law, thereby taking the trust assets out of the Debtor's estate under § 541(c)(2) of the bankruptcy Code, which provides that property of the estate does not include property which contains—

"A restriction on the transfer of a beneficial interest of the Debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

*Conroy*, supra, holds, following *In re Kincaid*, 96 B.R. 1014 (9th Cir.BAP 1989) and *In re Daniel*, 771 F.2d 1352 (9th Cir.1985),

"*Kincaid*, supra, following *Daniel*, concludes:

'Accordingly, ERISA–qualified pension plans containing anti-alienation provisions are excluded pursuant to § 541(c)(2) only if they are enforceable under state law as spendthrift trusts. *Daniel*, 771 F.2d at 1360. (quoting [In re] *Lichstrahl*, 750 F.2d [1488] at 1489–90) [(11th Cir.1985)].'" *Id.* at 499.

The critical question in the present case is whether the Ullman pension trust is a spendthrift trust under Montana law. For the purpose of this issue, I find the Debtor personally knows very little about the plans except that he owes the plan $143,-000.00 plus interest, that he has made no loans from his account since 1985, that he

---

**1.** Debtor contends that *In re Bloom*, 839 F.2d 1376 (9th Cir.1988) is contrary to *Conroy*, supra, and requires *Conroy* to be changed. Such is simply not the case. *Bloom* did apply a California exemption statute which allowed the Debtor *Bloom* to exempt an ERISA–qualified retirement plan. But the issue as to whether the California exemption statute was pre-empted by ERISA as held in *Conroy* was not before the court in *Bloom*, and for good reason. By the date *Bloom* was decided on appeal on February 24, 1988, *MacKey v. Lanier Collections Agency & Services, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d

836 (1988) had not been decided. Nor had the line of cases set forth in *Conroy*, *Id.* at 496, beginning with *In re Hirsch*, 98 B.R. 1 (Bankr. Ariz.1988), been decided. Indeed, the same Bankruptcy Judge who wrote the BAP decision in *Bloom*, Judge Robert Mooreman, *See*, 68 B.R. 455, authored the later *Hirsch* case on December 12, 1988, *see* 98 B.R. 1. The *BAP* decision in *Bloom* is silent as to ERISA, as is the Ninth Circuit Court of Appeal's decision. *Bloom* is therefore inapplicable to the *Conroy* holding on the ERISA pre-emption issue.

made no personal contributions to the plan since all contributions came from his corporation, that he exercises no control over plan administration or investments, but leaves those matters to the plan administrator, who can be removed under the terms of the plan by the corporation, without cause, that the plans are qualified under ERISA and the I.R.C., and that the settlor of the plan is Ronald H. Ullman, P.C., a Montana Corporation, in which the Debtor owns 100% of the outstanding stock.

 The law on spendthrift trusts is well-settled that a spendthrift trust cannot be self-settled, that is, a settlor cannot establish a trust under which he is to recover income as a beneficiary while at the same time attempting to protect the trust assets from his creditors by the simple inclusion of a spendthrift clause. *Conroy,* supra at 499–500. *In re Loe,* 83 B.R. 641, 645 (Bankr.Minn.1988) holds that although a Debtor makes no direct financial contribution to the plan, the plan is nonetheless self-settled because the employer's contributions are a form of employee compensation. It is clear to this Court that the case authorities on the issue of self-settling came down hard against the professional corporation, 100% owned by the plan beneficiary and trustee, which created an ERISA–qualified plan assertedly as spendthrift trust under state law. *See, In re Gifford,* 93 B.R. 636 (Bankr.N.D.Ind.1988); *In re McVade,* 72 B.R. 560, 562 (Bankr.N.D.Ind.1987); *In re Loe,* supra; *In re Swanson,* 873 F.2d 1121, 1124 (8th Cir.1989) (Trust Fund actually form of deferred compensation, while traditional state spendthrift trusts are generally used to provide for maintenance and support of its beneficiaries); *In re Kincaid,* 96 B.R. 1014 (9th Cir.BAP 1989); *In re Kaplan,* 97 B.R. 572 (9th Cir.BAP 1989); *In re Gifford,* 93 B.R. 636 (Bankr.N.D.Ind.1988); *In re Boon,* 90 B.R. 988 (Bankr.W.D.Mo.1987). Indeed, the Montana Supreme Court in *Lundgren v. Hoglund,* 219 Mont. 295, 711 P.2d 809, 812 (1985) specifically describes a spendthrift trust as one where the owner-donor, i.e., the settlor, creates a trust for another person called the beneficiary. It is therefore essential in creation of a spendthrift trust under Montana law that the settlor and beneficiary be different persons. The mere fact the Debtor has a controlled corporation as settlor does not diminish the fact that the Debtor is in fact the settlor of the trust for, except for form, the substance of the transaction is controlled by the Debtor under which he is beneficiary. *In re West,* 81 B.R. 22, 25 (9th Cir.BAP 1987) (the distinction between the corporation and the beneficiary has been disregarded). To hold otherwise would exalt form over substance. I conclude that where a professional corporation, solely owned and controlled by a Debtor sets up an ERISA–qualified pension trust, the plan does not qualify as a traditional spendthrift trust under Montana law since the Debtor is the self-settlor of the trust. Thus, Debtor's efforts to exclude the pension plan assets of the Debtor from the estate under § 541(c)(2) are rejected.[2]

IT IS ORDERED the objections to the claim of exemption by the Debtor in the corporate pension trust are sustained and the trust fund of the Debtor is declared to be property of the bankruptcy estate.

---

**2.** The objecting creditors and the Trustee, through their combined objections, seek only a determination as to the status of the Debtor's pension account. There is not a pleading before the Court as to how the pension trust funds can be secured by the Trustee at this time. A bankruptcy Trustee takes property of the Debtor subject to the same restrictions on property existing at the date of the Petition. *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986); *In re Baquet,* 61 B.R. 495, 499 (Bankr.Mont.1987). Since the Trustee has no greater substantive rights than does the Debtor, and valid property transfer restrictions exist against the Debtor, then the Trustee, like the Debtor, Ullman, may have to wait under Ullman's retirement at age 59½, death or disability to secure the trust funds. Since the issue has not been raised by any party, it is not decided in this Order.