**In re David Kenneth WEEKS, SSN 445–60–9880, Debtor.**

**Bankruptcy No. 89–70293.**

United States Bankruptcy Court, E.D. Oklahoma.

Oct. 11, 1989.

Ronald F. Walker, Okmulgee, Okl., for debtor.

Kenneth G.M. Mather, Tulsa, Okl., trustee.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On this 11th day of October, 1989, an Objection to Exemption filed by the Chapter 7 Trustee (Docket Entry # 7) with a Response by the Debtor (Docket Entry # 11), Joint Stipulations of Fact submitted by the parties on May 22, 1989 (Docket Entry # 12) and a Supplemental Brief on Hardship Distributions filed by the Chapter 7 Trustee (Docket Entry # 21) came before this Court for consideration.

A hearing was conducted on July 19, 1989 for the purpose of receiving oral argument on the legal issues in this matter with Kenneth G.M. Mather, the Chapter 7 Trustee, and Ronald Walker on behalf of the Debtor, appearing and presenting argument. It is agreed by the parties that there are no factual disputes and thus, this matter may be resolved upon the Joint Stipulations of Fact submitted and the legal argument received.

After review of the above-referenced pleadings and consideration of the arguments of counsel, this Court does hereby enter into the following Findings of Fact and Conclusions of Law in this core proceeding:

## STATEMENT OF ISSUE

The parties to this action present two unique legal questions for resolution, to-wit:

1. Whether the Employee Retirement Income Security Act program (ERISA) qualified retirement and thrift plan in which the Debtor participates is property of the bankruptcy estate; and if so,

2. Whether the same plan can be validly exempted from the estate by the Debtor pursuant to the Oklahoma exemption statutes in light of the provisions of the federal statute creating and governing ERISA qualified retirement plans.

## FINDINGS OF FACT

1. The Debtor claims ownership through the schedules filed in this case of an ERISA qualified retirement plan known as the National Oil Well Retirement and Thrift Plan (hereafter referred to as "Plan.") The Plan bears a service date of April 2, 1984.

2. The Plan is comprised of two accounts. As of September 30, 1988, the retirement account contained $835.45 and the thrift account contained employee contributions of $569.14 and employer matching funds of $284.58. Thus, the total proceeds in the Plan on the date last available was $1,689.17. The Debtor is one hundred percent vested in this Plan.

3. Normally, under the terms of the Plan, the Debtor/employee cannot withdraw pre-tax contributions prior to age 59½, except in instances of retirement or disablement. However, withdrawals are allowed for financial emergencies or hard-

ships, such as the education of children, purchase of a home or large medical expenses. These withdrawals are subject to the following conditions:

(a) The amount withdrawn will be taxed;

(b) The withdrawal must be approved by the Administrative Committee;

(c) an additional ten percent income tax will be assessed if the Debtor/employee is under the age of 59½, unless specific conditions exist (such as, if withdrawal is arranged through a divorce settlement or a domestic relations order of some type).

Withdrawal of after-tax employee contributions may be made on a quarterly basis. No requirement for repayment of these withdrawals appears in the terms of the Plan.

4. The Debtor filed a voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code on March 21, 1989, listing the Plan in the initial schedules filed, thereby including the Plan as property of the estate. The Debtor further claimed the Plan as exempt pursuant to the Oklahoma Statutes.

5. The Trustee challenges the Debtor's ability to exempt the Plan from the estate.

The Trustee relies on recent case law developing in this area in urging this Court to find that the ERISA statute by its terms preempts the Oklahoma state statutes granting an exemption on retirement plans. If successful, the Trustee seeks to stand in the place of the Debtor and assume all of the rights and benefits under the terms of the Plan in accordance with his position as representative of the estate pursuant to 11 U.S.C. § 541.

6. The Debtor asserts two avenues of contention in contravention to the Trustee's position. First, the Debtor claims that the Plan may be excluded from the estate pursuant to 11 U.S.C. § 541. With this position, the Debtor contends that the property would never enter the bankruptcy estate and would not be available to the Trustee, disregarding his voluntary inclusion. Second, the Debtor argues that if the Plan is in fact property of this estate, the Oklahoma exemption statutes are valid, effec-

tive and not subject to the preemption doctrine due to the ability of the various states to "opt out" of the federal exemptions and create exemptions different from and not necessarily contemplated by the federal Bankruptcy Code at 11 U.S.C. § 522.

## CONCLUSIONS OF LAW

The matter brought before this Court today creates perplexing legal issues that have only been addressed by a smattering of Courts throughout the nation. The potential devastating and far-reaching effect to all debtors in bankruptcy of determining a retirement plan as property of the estate and disallowing its exemption has caused this Court to contemplate extensively on this matter.

## I. CREATION OF THE ESTATE

A. Upon the filing of a bankruptcy petition, an estate is created consisting of all the debtor's property. A Trustee is appointed to whom all of this property is transferred. The Trustee serves as the custodian of the property and as a representative of the estate, inuring to all of the debtor's rights and benefits associated with the property transferred to him. This transfer is subject to a valid claim of exemption upon assertion by the debtor.

The concept of creating an estate containing all of the debtor's property is relatively new to bankruptcy. Under the Bankruptcy Act of 1898, the Trustee was vested with title to all of the debtor's property *except* for those items which were subject to a valid claim of exemption by the debtor. Thus, exempt property never entered the estate and the possession of such property was never transferred to the Trustee. See § 70 of Bankruptcy Act of 1898. Under the current Bankruptcy Code, however, title to all of the debtor's property is transferred to the estate for which the Trustee is the custodian and representative. Even exempt property enters the estate and is later removed from the property in the Trustee's possession and returned to the debtor upon a valid claim of exemption. See 11 U.S.C. § 541 and § 522. This dis-

tinction, while it might appear subtle, has a substantial effect upon the case at bar. Should the Plan be determined to be non-exempt, the Trustee would not in fact be acting as a creditor seeking to garnish the Plan, since the property was transferred to the estate upon the filing of the Petition by operation of law. This would prevent the restriction on such garnishment contained in the ERISA statutes from interfering with the Trustee's position. See 26 C.F.R. § 1.401(a)–13(b)(1) (1982) cited and discussed hereinbelow.

## II. PROPERTY OF THE ESTATE

■ B. The threshold issue which this Court must address is whether the subject property (the Plan) is excluded from the bankruptcy estate. Excluded property never enters the estate, and therefore never is transferred to the Trustee. Although the Debtor effectively admitted that the Plan was property of this estate by listing it in his Schedules, this Court will nonetheless examine this issue since the argument was asserted by the Debtor at oral argument.

Property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Plan at issue falls within this definition by representing the Debtor's legal and equitable interest in property, being a contractual right. Therefore, the rights and obligations created by the Debtor pre-Petition by entering into the Plan are transferred to his estate upon the filing of this case.

■ Some question has arisen as to whether the ERISA statutes allow this type of transfer of rights in the Plan to the Trustee. The ERISA statutes require that, in order for a plan to obtain tax qualified status, it must provide that benefits not be "anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)–13(b)(1) (1982). However, the Bankruptcy Code states that

"... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; ..." 11 U.S.C. § 541(c)(1)(A)

Thus, a conflict arises between these two federal statutes wherein ERISA prohibits a transfer and the Bankruptcy Code mandates said transfer into the estate. This inconsistency is resolved in the language contained in 29 U.S.C. § 1144(d) of the ERISA laws which states:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States (except as provided in §§ 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

This clearly shows the intent of Congress to subordinate the ERISA statutes to any other federal law with which they may be in conflict. As a result, the Trustee is not barred by the restriction on assignment in the ERISA statutes from ascending to the Debtor's position with regard to the Plan.

C. The broad definition of property of the estate contained in 11 U.S.C. § 541(a)(1) is not without qualification. This section is tempered by 11 U.S.C. § 541(c)(2) which places "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy laws enforceable in a case under this title." The trust to which this subsection applies is limited as well. The Congressional intent of this subsection is clearly demonstrated by the Committee Reports which state:

Paragraph (2) of Section (c) however, preserves restrictions on transfer of a spendthrift trust to the extent the restriction is enforceable under applicable non-bankruptcy law.

H.R.Rep. 595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 83 (1978), U.S.Code Cong. & Admin. News 1978, 5787, 5869, 6325.

This necessarily requires that the Plan at issue qualify as a spendthrift trust under the particular laws of the state which the

debtor asserts has jurisdiction over the case. The spendthrift trust requirements under Oklahoma state law are found at Okla.Stat.Ann. tit. 60, § 175.25 (West 1971). A generally accepted axiom of spendthrift trusts provides that "if a settlor creates a trust for his own benefit and inserts a 'spendthrift' clause, restraining alienation or assignment, it is void as far as creditors are concerned and they can reach the settlor's interest in the trust." *In re Witlin,* 640 F.2d 661, 663 (5th Cir.1981) cited in *In re Goff,* 706 F.2d 574, 587 (5th Cir.1983). Also see *In re Graham,* 24 B.R. 305, 309–310, 10 Bankr.Ct.Dec. 500, 503 (5th Cir.1983).

If the terms of an ERISA qualified plan serve to create a trust at all, the settlor or creator of any such trust would be the debtor. Said trust would be created for the debtor's own benefit (i.e., self-settled), effectively disqualifying ERISA plans from spendthrift classification. Further, under the Internal Revenue Service guideline for determining a "hardship" or an "immediate and heavy financial need," a tremendous amount of discretion is placed in the hands of both the Plan Administrator and the employee/beneficiary of the plan. See 26 C.F.R. § 1.401(k)–1. Such discretion is in direct contradiction to the intent and objective of a spendthrift restriction. Thus, we conclude that the Plan at issue is not protected under a spendthrift trust concept and therefore is found to be property of the estate. See also in this matter *In re Goff,* supra.

### III. EXEMPTION

D. Having determined that the retirement Plan at issue is in fact a part of the Debtor's estate and that the Plan was transferred to the Trustee upon the commencement of the case along with the rest of the Debtor's property, we must address the propriety of Debtor's claimed exemption relying upon the Oklahoma statute as revealed by the initial filings with this case. The Trustee is statutorily empowered to challenge the validity of the Debtor's claim of exemption. The Trustee in this case is not seeking to garnish the Plan which is clearly prohibited by the ERISA statutes.

This would be an unnecessary act, since the Plan is already in his possession, due to the transfer of all property at the commencement of the case.

■ Since the Trustee does have standing to challenge the Debtor's claim of exemption as to the Plan, we now examine whether that challenge has merit. The intent of an exemption is generally to protect the debtor and his property from his own improvidence and from his creditors. This recognizes that there exists certain core property which is essential for the debtor to survive and maintain some quality of life. This intent is demonstrated at both the state level in granting exemptions from garnishment and at the federal level in the bankruptcy "fresh start" concept.

■ The Bankruptcy Code allows the Debtor to claim certain property exempt, either through the federal exemptions listed in the Code or through state exemptions upon the exercise of a state to "opt out" of the federal exemptions. 11 U.S.C. § 522. Oklahoma exercised its ability to opt out some time ago. The Oklahoma exemption statute at issue may be found at Okla.Stat. Ann. tit. 31, § 1(A)(20) (West Supp.1988–89) which states:

... the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

(20) ... any interest in a retirement plan or arrangement qualified for tax exemption purposes under present or future Acts of Congress; ... 'Retirement plan or arrangement qualified for tax exemption purposes' shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption purposes permitted under present Acts of Congress include defined contribution plans and defined benefit plans as defined under the Internal Revenue Code

('IRC'), . . . IRC Section 403(a) annuity plans, IRC Section 403(b) annuities . . . This provision shall be effective for retirement plans and arrangements in existence on, or created after the effective date of this act;

The clear concerns of this particular exemption statute are first, that retirement plans be protected from attachment by creditors; and second, that these protected retirement plans meet the IRS criteria for attaining tax exempt status. Thus, it is undisputed that the Plan at issue is intended to be exempted under the Oklahoma statutes as written since the IRC sections which afford ERISA its tax exempt status are specifically set forth in the Oklahoma State exemption statute. This particular section is relatively new to the exemption scheme under Oklahoma laws (having been enacted on April 16, 1987 by emergency declaration of the Oklahoma Legislature), and thus the problems it creates in this area have only recently arisen in Oklahoma.

E. The controversy concerning the possible preemption of the state statutes exempting ERISA qualified plans culminated in the case of *Mackey v. Lanier Collections Agency and Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In that case, the United States Supreme Court determined on a five to four vote that ERISA qualified welfare benefit plans are protected from garnishment pursuant to state statute by the provisions of ERISA.

The *Mackey* case and the progeny of cases it spawned are clearly distinguishable from the instant case since the facts revolved around a state garnishment action which as stated hereinabove is explicitly distinct and different from the Trustee's asserted position in this particular case. However, the Court in *Mackey* set forth a rule of law which does have applicability in the case at bar. Namely, the Court specifically found that the provisions of ERISA preventing the garnishment of the plan preempted a Georgia state statute providing for the exemption of ERISA qualified retirement plans. The Georgia statute is very similar to the one at issue in this case from Oklahoma.

"Preemption" is the "doctrine adopted by the U.S. Supreme Court holding that certain matters are of such a national, as opposed to local, character that federal laws preempt or take precedence over state laws . . . ." See Black's Law Dictionary 1060 (5th ed. 1979). Although such a doctrine is directly opposed to the position which this Court has traditionally held with regard to federal supremacy, the rule of law stated in *Mackey* is not easily escapable.

Specifically, the ERISA statutes at § 514(a) preempt "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan which qualifies under the statute." 29 U.S.C. § 1144(a). The intent of a State Legislature to create an exemption which will dovetail with the federal ERISA statute will not rescue a particular state statute from preemption. "The preemption provision [of § 514(a)] . . . displace(s) all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Insurance v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Thus, despite the fact that the Oklahoma exemption statute is intended to accomplish the same purpose as the provisions of ERISA, the state statute is nonetheless preempted.

Despite the fact that most cases addressing this issue have been outside of the bankruptcy setting, we can find no justification for concluding differently on the preemption issue, given the expansive language contained in the ERISA statutes and the rule of law dictated by the Supreme Court enforcing its provisions. Thus, we conclude that the ERISA statutes preempt the exemption statute in Oklahoma pertaining to retirement plans for all purposes in the bankruptcy setting.

F. The Debtor encourages this Court to determine that the Oklahoma exemption provisions should be given the effect of federal law and thus not be preempted. The Debtor reasons that the United States

Congress passed the United States Bankruptcy Code subsequent to the ERISA provisions. As a result, the opt out possibility conferred in 11 U.S.C. § 522 and exercised by the Oklahoma Legislature, the Debtor argues, should allow the state exemption statutes to have the same effect of federal law, just as if the state had not opted out of the federal exemptions.

Clearly, the ERISA statutes were not intended to affect any federal law as has been discussed hereinabove. See 29 U.S.C. § 1144(d), supra.

■ However, despite the potential for the Debtor's argument, we cannot find and have not been offered any precedent for a determination that this state law should be or can be afforded the effect of federal law. The theory that the state exemption statutes are somehow incorporated within the Bankruptcy Code due to the ability of states to opt out of the exemptions contained within the Code is interesting from a State's rights viewpoint but is simply unfounded.

For the foregoing reasons, the Plan at issue in this case is held to be not exempt.

Thus, since this Court has determined that the property is in fact in the estate and not subject to a valid exemption, the Trustee may exercise the Debtor's rights and receive any benefits under the Plan as the custodian and representative of the estate, since the Plan was transferred to his possession by operation of law upon the Debtor filing his Petition and seeking relief from this Court.

## IV. COMMENTS

G. The Court takes this opportunity to make some practical observations in this matter. The ERISA statutes were enacted by the United States Congress in an attempt to protect and benefit those parties who have committed substantial funds to their ultimate retirement. This has been done by shielding these funds from garnishment of creditors and by affording them tax deferred status. Those seeking to benefit from the statutes must be willing to accept them as they are written and thereby withstand the consequences of the clear meaning of the provisions contained in ERISA. As this Court has written and enforced numerous times in the past, "for every benefit, there is a burden." The benefits afforded by the ERISA statutes to a debtor/employee are obvious. The restriction which accompanies these benefits is that only the ERISA statutes will be allowed to govern these retirement plans created under that law's precepts. If this is too onerous of a burden to bear on the part of the debtor/employee, he may decline participation.

H. Although discussed in detail above, the cornerstone element of this decision is worthy of repeating for clarification. The concept of creating an estate and transferring *all* of the debtor's estate to the Trustee subject to a valid claim of exemption is the crucial distinction which allows the result in this case. This concept is unique to bankruptcy. In a state garnishment proceeding, the same result would not be possible since a creditor would be forced to levy execution on the Plan in order to obtain the Plan proceeds. This action is strictly prohibited under the dominant federal ERISA statutes and therefore the creditor would be stopped in its efforts. In bankruptcy, no garnishment and no execution is necessary due to the instant transfer of property to the Trustee. Thus, the result in this case is attributable to the peculiar interrelationship of bankruptcy with state and federal law.

I. Finally, we are distinctly aware of the unique position that the Trustee will assert in attempting to avail himself of the rights of the Debtor under the Plan as the representative and custodian of the estate. Ostensibly, the Trustee will claim bankruptcy as an "immediate and heavy financial need" and request hardship payment from the Plan Administrator. It is clear that the Trustee can claim no greater rights than the Debtor himself possessed at the time of the filing of the Petition. See H.R.Rep. 95–595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 82–83 (1978). Thus, the Trustee is essentially asserting that the Debtor could have made a similar demand

of the Plan Administrator upon discovering the deficiency position which warranted bankruptcy. This Court wishes to make it abundantly clear that this Order should not be construed to determine the outcome or validity of the Trustee's demand from the Plan Administrator. That issue is for another time and possibly another Court.

Clearly, the success of the Trustee in his efforts to benefit from the Plan is still in substantial question. As a result, while it may appear that the Trustee has won the most immediate battle, the war in this area will most certainly rage on.

IT IS THEREFORE ORDERED that the National Oil Well Retirement and Thrift Plan is property of the estate. Further, the Objection to Exemption filed by the Trustee is hereby sustained for the reasons set forth hereinabove and thereby the Trustee assumes the rights, benefits and burdens possessed by the Debtor under the Plan at the filing of the Petition.