**In re John Rogers MARTIN, Debtor.**

**In re Henry A. VERWER and Kathleen M. Verwer, d/b/a H & K Paints, Debtors.**

**In re David M. FULLMER and Linda L. Fullmer, Debtors.**

Bankruptcy Nos. 89B–05149, 89B–05263, 89B–06063.

United States Bankruptcy Court, D. Utah, C.D.

June 19, 1990.

Paul James Toscano, of Prince, Yeates & Geldzahler, Salt Lake City, Utah, for Trustee of Estate of John Rogers Martin.

Ronald G. Schiess, and Matthew M.F. Hilton, Brown, Smith & Hanna, Salt Lake City, Utah, Special Counsel, with him on the brief for John Rogers Martin, debtor.

Duane H. Gillman, and Janet A. Goldstein, of McDowell & Gillman, P.C., Salt Lake City, Utah, for Trustee of Estate of Henry A. Verwer and Kathleen M. Verwer.

J. Kevin Bird, of Bird & Fugal, Provo, Utah, for Henry A. Verwer and Kathleen M. Verwer, debtors.

Stephen W. Rupp, and Mona Lyman, of McKay, Burton & Thurman, Salt Lake City, Utah, for Trustee of Estate of David M. Fullmer and Linda L. Fullmer.

Robert G. Norton, of Moore, McDonough & Norton, Salt Lake City, Utah, for David M. Fullmer and Linda L. Fullmer, debtors. Matthew M.F. Hilton, St. George, Utah, Special Counsel.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

These three chapter 7 cases give this court the opportunity to address an issue vigorously litigated in bankruptcy courts nationwide. The dispute is whether the debtors' claimed exemptions in funds held in Employee Retirement Income Security Act of 1974 (ERISA)[1] qualified retirement plans can withstand objections filed by the chapter 7 trustees pursuant to 11 U.S.C. § 522(l)[2] and Bankruptcy Rule 4003(b). The court has considered the memoranda submitted by counsel, heard oral argument where appropriate, and made an independent review of case law and statutory authority. This court concludes that the debtors' state law exemptions claimed in funds held in qualified plans fall to the preemptive authority of ERISA and remain property of the estate.

## BACKGROUND

Two issues are presented by these cases. First, are funds held in ERISA qualified retirement plans (Plans) property of the estate?[3] Second, if such funds are property of the estate, can they be claimed as exempt? The claimed exemptions are found in Utah Code Ann. § 78–23–5(1)(j) (1989 Supp.) and Utah Code Ann. § 78–23–6

---

1. 29 U.S.C. § 1001 et seq.

2. Future references to the United States Code are to Title 11 unless noted.

3. Copies of each plan were attached as exhibits to the pleadings on file with the court in the *Martin* and *Fullmer* cases. No exhibit was filed in the *Verwer* case, though the facts were recited in the briefs.

(1953). If applicable, these exemptions protect the Plans from creditors' claims.[4] The essential facts of the three cases are summarized below.[5]

### The Martin Case

John Rogers Martin (Martin) is a mortgage loan officer for American Residential Mortgage Company. Martin participated in an employee investment plan provided by his employer that was qualified under I.R.C. §§ 401(k)[6] and 501(a) (1986). The plan contains the anti-alienation and anti-assignment clauses required by ERISA in order to restrict the transfer of money held by the plan for the beneficiary of the trust. Martin became eligible to participate in the plan only after completion of one year of eligible service. Martin's participation in the investment plan was voluntary and could be terminated upon giving proper notice. He chose to participate in the plan and designated a beneficiary to receive benefits after his death. Martin can stop making contributions at any time upon written notice.

Martin's contribution to the investment plan was discretionary up to 12% of his salary, but not more than $7,000 annually. Whatever the amount contributed, it consisted entirely of salary deferral. Martin's employer would in turn contribute the lesser of:

(a) 25% of his Allowable Compensation (which excludes all amounts which a Participant elects to defer in the Fiscal Year as a Salary Deferral Contribution), or

(b) $30,000 or such other amount as may be established for the Limitation Year pursuant to Code section 415.

Article 6—Allocation Limitations and Special Rules, § 6.1 Contribution Limitations, First Nationwide Employee's Investment Plan. Funds held in the plan could be withdrawn by Martin upon terminating his employment or upon retirement. Either a loan or withdrawal of funds held in the plan could be made upon application to a loan committee. A loan or withdrawal would be authorized for heavy and immediate financial needs only if the necessary funds were not reasonably available from other sources. The committee alone determined the validity of the hardship for which a loan was requested. Martin made application for such a loan but the committee denied his request.

Martin filed a petition for relief under chapter 7 and claimed the 401(k) investment plan as exempt pursuant to section 522(b) and Utah Code Ann. §§ 78–23–5(1)(j) and 78–23–6(3). At the time of filing the funds accumulated in the plan totaled $14,289.76. Martin contributed $7,807.58, his employer contributed $3,276.18, and income accumulation totaled $3,206.00.

### The Verwer Case

Henry and Kathleen Verwer (Verwers) were employed by Signetics when they filed their petition.[7] Both the Verwers had the option to participate in an ERISA qualified 401(k) Employee Savings Plan through their employer. Their plan also contained the ERISA required anti-assignment and anti-alienation clauses similar to Martin's plan. The Verwers assert their plan is not self-settled but was created by Signetics for their benefit and they are without power to control or modify the terms of the plan. The only discretion the Verwers claim to have is the ability to participate and become beneficiaries. The Verwers argue their plan qualifies as a spendthrift trust and the funds accumulated are excluded from inclusion as property of the estate.[8]

At the time of filing Mr. Verwer had accumulated vested benefits under the plan

---

4. Utah has opted out of the federal exemptions allowed in 11 U.S.C. § 522. *In re Neiheisel,* 32 B.R. 146, 164 (Bankr.D.Utah 1983).

5. For simplicity, Martin, Verwers and Fullmer will be collectively referred to as the debtors where applicable.

6. Future references to I.R.C. § 401(k) will simply be stated 401(k).

7. Mrs. Verwer has since terminated her employment with Signetics.

8. The Verwers have stipulated to submission of the legal issues without argument, reserving the right to present evidence on all factual issues; therefore, the court makes no specific finding regarding the facts of this case.

of $58,656.73 and Mrs. Verwer had accumulated $17,190.45.[9] The Verwers filed a petition for relief under chapter 7 and claimed the amounts in the plans as exempt pursuant to the same sections of the Bankruptcy Code and the Utah Code as did Martin.

The Fullmer Case

David Fullmer (Fullmer) had been employed by United Savings/Western Mortgage for 17 years and during that time participated in the companys' 401(k) plans. Fullmer, and his wife Linda, filed a joint chapter 7 petition for relief and claimed the funds held in the plans as exempt property pursuant to Utah Code Ann. § 78–23–6.[10] Fullmer valued his interest in the Western Mortgage plan at $32,464.37 and his interest in the United Savings plan at $59,050.68.[11] Fullmer, unlike Martin and the Verwers, does not assert that his plan qualifies for a spendthrift trust exception from property of the estate. Fullmer claims the ERISA plan trustees must be joined as indispensable parties under Bankruptcy Rule 7019.[12]

## ARGUMENT

### A. Jurisdiction

The court has jurisdiction over the subject matter of and parties to these contested matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a). The court has authority to enter a final order in these core matters as set forth in 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A) and (B).

### B. Property of the Estate

The filing of these chapter 7 petitions created individual estates consisting of the debtors' legal or equitable interest in property as of the commencement of each case.[13] The funds in the Plans represent legal or equitable interests of the debtors in property. Ordinarily such property transfers to the estate upon the filing of a petition. *In re Weeks*, 106 B.R. 257, 260 (Bankr.E.D.Okla.1989). ERISA does not interfere with the automatic vesting of the debtors' interests in the estates because "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States". 29 U.S.C. § 1144(d).

These estates also include exempt property. Exempt property under section 522($l$) can be released from an estate if a valid exemption is claimed by a debtor and no objection to the claim of exemption is sustained by the court.[14]

### C. Spendthrift Trust Exception

An exception to the broad sweep of section 541(a)(1) is found in section 541(c)(2). "A restriction on the transfer of a beneficial interest of the debtor in a trust

9. These are the amounts set forth in the Verwer's response to the trustee's objection to the claimed exemption. However, the B-4 schedule filed by the Verwers indicates $70,503.00 is claimed as exempt property held in § 401(k) plans.

10. Fullmer's B-4 schedule states that the pension plan is exempt pursuant to Utah Code Ann. § 78–23–6. However, the trustee has objected to the exemption based upon Utah Code Ann. §§ 78–23–6 and 78–23–5. Fullmer has likewise argued both sections of the Utah Code in response.

11. The amount listed on the B-4 schedules was $50,000, but the parties agreed the correct amount is that set forth in the pleadings.

12. This rule is inapplicable in this contested matter.

13. 11 U.S.C. § 541 states in part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

14. 11 U.S.C. § 522($l$) states:
The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section ... Unless a party in interest objects, the property claimed as exempt on such list is exempt.
Bankruptcy Rule 4003(a) and (b) states:
(a) Claim of Exemptions. A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007....
(b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt....

that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." § 541(c)(2). The congressional intent behind this section was to preserve restrictions on the transfer into the estate of property held in a spendthrift trust. *Weeks,* 106 B.R. at 260 *and In re Kerr,* 65 B.R. 739, 744 (Bankr.D.Utah 1986). Section 541(c)(2) limits the exception to those trusts that qualify as spendthrift trusts under state law. *Goff v. Taylor (Matter of Goff),* 706 F.2d 574, 587 (5th Cir.1983). Therefore, it is possible that ERISA qualified plans may not enter the estate if they qualify as valid spendthrift trusts under state law. *Boon v. Miner (In re Boon),* 108 B.R. 697, 705–06 (W.D.Mo. 1989).

*In re Kerr,* 65 B.R. at 744–45, reviewed the characteristics of a spendthrift trust.[15] In a valid spendthrift trust the debtor cannot be both the settlor and the beneficiary of the trust. *Leach v. Anderson,* 535 P.2d 1241 (Utah 1975); *Cronquist v. Utah State Agricultural College,* 114 Utah 426, 201 P.2d 280 (1949).[16] Analyzing spendthrift trusts in a bankruptcy context, *Kerr* noted:

> In general, a spendthrift trust is one in which the beneficiary is prohibited from anticipating or assigning his interest in or income from the trust fund.
>
> . . . .
>
> The Utah cases cited suggest that Utah would follow the traditional view and hold that restrictions on alienation will *not* be enforced against creditors if the trust is self-settled, that is, if the settlor and beneficiary of the trust are the same person. [Citations omitted.]

*Kerr,* 65 B.R. at 744–45.

The debtors argue the Plans themselves establish a trust, as opposed to the individual efforts of the debtors. They assert the Plans were created for the benefit of all employees, not just these individual debtors, and that the debtors have no control over any distribution by the trustees. Under this reasoning the debtors, as settlors, have not created the trust; therefore, the spendthrift trust would be valid.

This rationale is contrary to the evidence before the court. Although the Plans' legal framework has previously been established, the debtors have the election whether to participate in the Plans. Absent the debtors' participation, the framework has no substance because it lacks a specific trust res or an identifiable beneficiary. In Utah,

> [t]he principles governing the creation of a trust are well settled. An inter vivos trust is created when a settlor, with intent to create a trust, transfers property to a trustee in trust for, or declares that he or she (the settlor) holds specific property in trust for, a named beneficiary.... the trust property must be clearly specified and set aside ... and the essential terms of the trust must be clear enough for the court to enforce the equitable duties that are the *sine qua non* of a trust relationship....
>
> This requirement of clarity is met if the beneficiaries are identified....

*Sundquist v. Sundquist,* 639 P.2d 181, 183 (Utah 1981). If the debtors choose to participate, it is the debtors who are the creators of a trust res which inures to their benefit and it is the debtors who specify a beneficiary.

■ Funding of the Plans is solely at each debtors' discretion. No contribution

---

**15.** *Kerr* recognizes that the

Utah Supreme Court has not indicated whether or not spendthrift trusts are valid in Utah to any extent, but has stated that there is a presumption against the creation of a spendthrift trust unless either words to that effect are set forth, or the clear and undoubted intention is manifested by the terms of the trust instrument.

*Kerr,* 65 B.R. at 744.

**16.** Martin and the Verwers attempt to distinguish *Kerr* by citing to *Cronquist* and arguing that express language suggesting an intent to establish a spendthrift trust by the settlor will suffice under Utah law. They assert all that is necessary is that the debtors' intent to create a trust must be clearly shown. They argue the clear language of their Plans creates a spendthrift trust. The debtors' argument ignores the bankruptcy court's analysis in *Kerr.* Under *Kerr,* regardless of any intent to create a trust, if the settlor and the beneficiary are the same person any restrictions on the transfer of trust property will not be enforced under the spendthrift trust theory.

would be made by employers to the individual accounts if the debtors did not choose to participate. Each debtor has the option, upon certain conditions, to seek to invade the corpus of the trust or indeed to terminate the trust. The mere fact a debtor "can exercise absolute dominion and control over his interest by terminating his employment" is sufficient to invalidate a spendthrift trust. *In re Schmitt*, 113 B.R. 1007 (Bankr.W.D.Mo.1990). Although such choices and options are not unlimited, they do exist.

*Weeks* addressed this argument and stated:

> If the terms of an ERISA qualified plan serve to create a trust at all, the settlor or creator of any such trust would be the debtor. Said trust would be created for the debtor's own benefit (i.e., self-settled), effectively disqualifying ERISA plans from spendthrift classification. Further, under the Internal Revenue Service guideline for determining a 'hardship' or an 'immediate and heavy financial need', a tremendous amount of discretion is placed in the hands of both the Plan Administrator and the employee/beneficiary of the plan. *See* 26 C.F.R. § 1.401(k)-1. Such discretion is in direct contradiction to the intent and objective of a spendthrift restriction. Thus, we conclude that the Plan at issue is not protected under a spendthrift trust concept and therefore is found to be property of the estate.

*Weeks*, 106 B.R. at 261; *accord, Goff*, 706 F.2d at 587. This court agrees. The discretion placed in the settlor and the beneficiary is in direct contradiction to the intent and objective of a spendthrift restriction. The exception found in section 541(c)(2) is therefore not applicable and the funds in the Plans are property of the estate under section 541(a)(1).

■ Martin makes an additional argument under section 541(c)(2) not presented by the other two debtors. At a minimum, Martin claims the employer's matching contributions and proportionate share of accumulated trust income constitute a spendthrift trust. Martin indicates that his entitlement to the funds held in his plan is dependent upon his ability to receive them. The funds in Martin's plan are divided into three separate groups according to their source; those contributed by him individually, those contributed as matching funds by his employer, and those funds that constitute accumulated trust income. Martin claims that because his entitlement to receive the funds is contingent upon the fulfillment of particular conditions, such funds are not property of the estate because those conditions remain unsatisfied.

This court disagrees with Martin's analysis. As stated in *In re Schmitt*, 113 B.R. 1007 (Bankr.W.D.Mo.1990):

> The proper analysis seems to be not whether the Debtor is presently entitled to receive a distribution, but instead, whether the debtor has rights which allow him to control distribution. It is the Debtor's rights to exercise dominion and control over the Profit Sharing Plan that renders the Plan unenforceable as a spendthrift trust in this case. The Trustee, although having no power to terminate the Debtor's employment relationship ... succeeds to the same rights to control distribution of the proceeds. Since the Debtor can absolutely obtain the proceeds, at any time, by terminating his employment, the Trustee in bankruptcy succeeds to that absolute right to compel distribution.

Based on the above analysis the entire amount held in Martin's plan is correctly included as property of the estate because Martin can obtain the funds at any time by terminating his employment.[17] *Christison v. Slane (In re Silldorff)*, 96 B.R. 859 (C.D.Ill.1989).

*D. Exemption*

The debtors argue the funds in the Plans are exempt from the bankruptcy estate pursuant to Utah Code Ann. § 78–23–5(1)(j) that provides in part:

17. State law may statutorily authorize a spendthrift trust under which an employer's matching contribution may be excluded from property of the estate. *Matter of Tisdale*, 112 B.R. 61 (Bankr.D.Conn.1990). Utah has no such statutory provision.

(1) An individual is entitled to exemption of the following property:

....

(j) any money or other assets payable to the individual as a participant or beneficiary from or an interest of the individual as a participant or beneficiary in a retirement plan or arrangement which is described in Sections 401(a), 401(h), 401(k), 403(a), 403(b), 409, 414(d), or 414(e) of the United States Internal Revenue Code of 1986, as amended.

The debtors assert that by enacting this new provision the Utah legislature has carved out an exemption from the bankruptcy estate for certain qualified retirement plans effective April 24, 1989.[18]

If the funds in the Plans are not exempt under Utah Code Ann. § 78–23–5(1)(j), the debtors claim them as exempt under Utah Code Ann. § 78–23–6(3). Section 78–23–6(3), in existence since 1981, states:

Besides the property specified in § 78–23–5, an individual is entitled to exemption of the following property to the extent reasonably necessary for the support of the individual and his dependents:

....

(3) Assets held, payments, and amounts payable under a stock bonus, pension, profit-sharing, annuity, or similar plan providing benefits other than by reason of illness or disability.

### E. The Preemptive Effect of ERISA

■ The trustees do not dispute that, if applicable, Utah Code Ann. § 78–23–5(1)(j) would provide an exemption. Instead, the trustees argue section 78–23–5(1)(j) has been preempted by 29 U.S.C. § 1144(a)[19] that states "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)."

This argument is premised upon an interpretation of *Mackey v. Lanier Collections Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). *Mackey* addressed the issue of whether a Georgia statute protecting ERISA qualified plans from garnishment was preempted. In concluding that ERISA preempted the entire field of law relating to ERISA qualified welfare plans the Court stated:

ERISA § 514(a) pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute....

The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans.... 'A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with *or reference to* such a plan.' *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 [103 S.Ct. 2890, 2900, 77 L.Ed.2d 490] [citations omitted] (1983) (emphasis added). On several occasions since our decision in *Shaw*, we have reaffirmed this rule, concluding that state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a). [Citations omitted]. In fact, we have virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are preempted under § 514(a). [Citations omitted].

The possibility [the statute] was enacted by the Georgia legislature to help effectuate ERISA's underlying purposes ... is not enough to save the state law from pre-emption. 'The pre-emption provision [of § 514(a) ] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.' [Citation omitted].

*Mackey*, 108 S.Ct. at 2185.

Because the *Mackey* decision involved an ERISA qualified welfare plan, there has

---

**18.** Utah Code Ann. § 78–23–15 states "[n]o individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in [section 522(d) of the Bankruptcy Code]." The exemptions provided under the Utah Code are the sole source of bankruptcy exemptions available in Utah.

**19.** 29 U.S.C. § 1144(a) (1976) is commonly referred to as ERISA § 514(a).

been some debate over whether *Mackey* applies to ERISA qualified retirement plans. The consensus is that the expansive reading of 29 U.S.C. § 1144(a) in *Mackey* would apply with respect to both welfare and retirement plans that fall under the regulation of ERISA.[20]

Certain elements contained in Utah Code Ann. § 78–23–5(1)(j) assist in determining whether the statute is designed to affect ERISA qualified plans and is therefore preempted by ERISA. *Mackey*, 108 S.Ct. at 2185. Section 78–23–5(1)(j) makes specific reference to retirement plans described in I.R.C. §§ 401, 403, 409, and 414. Several courts have taken the position that state statutes referring to the Internal Revenue Code sections governing qualified pension plans are statutes relating to ERISA.[21] Utah Code Ann. § 78–23–5(1)(j) attempts to regulate the attachment by creditors of funds in the Plans. That regulation affects the continued existence of the funds in the plan. Were it not for this protective provision, the funds in the plans could cease to exist through attachment. Many courts have also recognized that state statutes referring to ERISA qualified pension plans are preempted by ERISA.[22]

The debtors argue to the contrary that Utah Code Ann. § 78–23–5(1)(j) does not have enough of an effect on ERISA to merit preemption. They rely on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983) which states:

> Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.

*Cf. American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2nd Cir.1979). (State garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted).

The debtors fail to cite the remainder of the footnote in which the Court states "the present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. *Shaw* does not support the debtors' position because the Court declined to establish the circumstances limiting the reach of laws that relate to ERISA.

*Shaw* did however, directly address the definition of the phrase "relate to" in 29 U.S.C. § 1144(a). "The breadth of § 514(a)'s pre-emptive reach is apparent from that section's language. A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. The Court expands this definition by referring to Black's Law Dictionary and citing the definition of relate. "Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Shaw*, 463 U.S. at 97 n. 16, 103 S.Ct. at 2900 n. 16.

*Shaw* examined the legislative history of ERISA and found that the purpose behind the statute, congressional intent, and the plain language of the statute require that ERISA must be given a "pre-emptive scope ... as broad as its language." *Shaw*, 463

---

20. *See In re Brown*, 95 B.R. 216, 218 (Bankr.N. D.Okl.1989) ("While the *Mackey* decision is concerned only with ERISA qualified welfare benefit plans, the language is so broad and the intent so clear that it is apparent that the rule laid down applies to ERISA qualified pension plans as well."); *see also In re Burns*, 108 B.R. 308, 311 (Bankr.W.D.Okl.1989); *In re Sellers*, 107 B.R. 152, 155 (Bankr.E.D.Tenn.1989); *In re Weeks*, 106 B.R. at 262; *In re McLeod*, 102 B.R. 60, 64 (Bankr.S.D.Miss.1989); *and, Penick v. Hirsch (In re Hirsch)*, 98 B.R. 1, 2 (Bankr.D.Ariz.1988).

21. *See Burns*, 108 B.R. at 311; *In re Komet*, 104 B.R. 799, 801, n. 3 (Bankr.W.D.Tex.1989); *and,*

*Heitkamp v. Dyke (In re Dyke)*, 99 B.R. 343, 349 (Bankr.S.D.Tex.1989).

22. *See In re Conroy*, 110 B.R. 492, 496 (Bankr.D. Mont.1990); *Burns*, 108 B.R. at 311; *In re Alagna*, 107 B.R. 301 (Bankr.D.Colo.1989); *Sellers*, 107 B.R. at 155; *Komet*, 104 B.R. at 801; *McLeod*, 102 B.R. at 62; *Dyke*, 99 B.R. at 349; *and, Brown*, 95 B.R. at 218. *See contra, In re Seilkop*, 107 B.R. 776, 778 (Bankr.S.D.Fla.1989); *In re Martinez*, 107 B.R. 378, 380 (Bankr.S.D.Fla. 1989); *and, In re Volpe*, 100 B.R. 840, 854–55 (Bankr.W.D.Tex.1989).

U.S. at 98, 103 S.Ct. at 2901. The legislative history stresses the breadth of federal pre-emption.

Representative Dent, for example, stated:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation. [Citation omitted].

Senator Williams echoed these sentiments:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

*Shaw,* 463 U.S. at 99, 103 S.Ct. at 2901.

■ Under *Mackey,* the following principles are established: (1) 29 U.S.C. § 1144(a) preempts any state law that relates to an ERISA qualified plan; (2) a law relates to an employee benefit plan, in the normal sense of the phrase, if it has reference to the plan; and (3) state laws specifically designed to affect ERISA qualified plans, even if the state law is consistent with the

provisions of ERISA, are related to ERISA qualified plans and thus preempted by ERISA. Preemption removes any possible conflict because federal law has stepped into the field and has ousted the state law that relates to ERISA.

Utah Code Ann. § 78–23–5(1)(j) has bearing on, concern with, pertains to, refers to, and brings state initiated legislation into association with or connection with ERISA. Specific reference to ERISA qualified retirement plans, as well as attempted regulation of the existence of the asset, makes this conclusion plain. Section 78–23–5(1)(j) relates to the regulation of employee benefit plans as contemplated in *Shaw* and cannot be said to affect ERISA qualified plans "in too tenuous, remote or peripheral a manner." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901. The state law does not coexist or coregulate the field; the federal law does so without interference. The Utah statute, by its express reference to the plans at issue here, relates to ERISA and is thereby preempted.

### F.  Harmonious Intent

■ The debtors also argue a state statute cannot be preempted by a federal statute unless the state statute conflicts with the federal statute. Martin argues the Utah exemption statute is completely consistent with the public policy behind ERISA to protect employee benefit plans from creditors by means of anti-alienation and non-assignment clauses.[23] As a consequence, preemption would not apply. Martin cites in support the Supremacy Clause of the United States Constitution [24] and *In*

---

23.  This court can only conclude that in choosing to opt out of the Bankruptcy Code exemptions in 1981, the Utah legislature evaluated the effect ERISA might have and the result that would flow from excluding section 522(d)(10)(E) from the statutory scheme. By so doing, exemption for stock bonuses, pensions, profit sharing, annuities or similar plans for a Utah debtor was limited to Utah Code Ann. § 78–23–6 after 1981. Recognizing this omission, it appears the Utah legislature attempted to fill the void with Utah Code Ann. § 78–23–5(1)(j). However, in light of ERISA's expansive reach, such efforts are ineffectual.

24.  U.S. Const. art. VI, § 2. This court has determined the issues of these cases without the necessity of reaching the constitutional issue raised by Martin.

In addition, the trustee in Fullmer asserts that Utah Code Ann. § 78–23–5(1)(j) is an unconstitutional violation of the Contracts Clause of the United States Constitution. Again, this court has determined the issues of these cases without the necessity of reaching the constitutional issue raised by the trustee in Fullmer. Two bankruptcy courts have, however, recently addressed this issue and are instructive as to the legal analysis. *See generally, In re Garrison,* 108 B.R. 760 (Bankr.N.D.Okla.1989) and *In re Walker,*

*re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex. 1989).

*Volpe* adopts the minority view on these issues and asserts "[n]o state law is preempted unless it conflicts with valid federal law." *Volpe,* 100 B.R. at 847–48. *Volpe* however, acknowledges that where there is no direct conflict between the federal and state statute, whether preemption occurs is a matter of statutory interpretation. "Since Congress can choose to preempt an entire field for regulation to itself either explicitly or implicitly, any analysis must first start with a definition of how large is the field which is intended to be preempted." *Volpe,* 100 B.R. at 846–47. "The 'field' preempted appears to be any state laws which 'relate to any employee benefit plan.'" *Volpe,* 100 B.R. at 847. Yet, in analyzing the requirement that a state law must relate to an employee benefit plan in order for preemption to occur, *Volpe* narrowly construed the plain meaning of the term and held the Texas statute at issue was "too tenuous, remote or peripheral to 'relate' within the meaning of 29 U.S.C. § 1144(a)." [25] *Volpe,* 100 B.R. at 854.

Examining *Volpe* and considering the *Mackey* decision, *In re Conroy,* 110 B.R. 492, 496–97 (Bankr.D.Mont.1990) stated:

The majority of courts which have been presented with this issue have likewise concluded that when a state has an ERISA pension plan exemption, and the state has opted out of the federal exemption of § 522(d), as has Montana ... the *Mackey* decision compels the result that the state created exemption is void because it has been pre-empted. [Citations omitted.] Moreover, as noted in *In re*

*Seigel,* [105 B.R. 556] at 563 [ (D.Ariz.1989) ], one does not have to find the Montana law in conflict with ERISA in order for the doctrine of preemption to apply, as we held in *Volpe* ....

Appellants also contend that ERISA preemption only applies to state laws which are in conflict with ERISA. This contention is in conflict with the statements of the Supreme Court in *Mackey* and *Metropolitan Life* [*Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) ] that "the pre-exemption provision [of § 514(a) ] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements" [citations omitted]. The argument assumes that preemption cannot occur unless there is a conflict with federal law. * * * However, when Congress preempts a field, the mere existence of a state law relating to regulation of that field is a conflict. Congress intended uniform regulation of employee benefit plans. Any state statute that "relates to" a plan so as to provide regulation of ERISA is preempted under prior Supreme Court decisions.

*Conroy,* 110 B.R. at 497 (citing *Siegel v. Swaine (In re Siegel),* 105 B.R. 556, 563 (D.Ariz.1989)). This court concludes the debtors' reliance on *Volpe* is misplaced.

## G. Federalization of State Law

■ An additional argument asserted by the Verwers pertains to section 522(b)(2)(A) [26]. The argument advanced is that because the Bankruptcy Code allows

---

108 B.R. 769 (Bankr.N.D.Okla.1989). This court does not address the issue.

**25.** The *Volpe* court squarely addressed the minority position it was taking by commenting that the court had "jumped into the briar patch of narrowly construing the broad language of the Supreme Court and disagreeing with almost every published opinion on this subject to date". *Volpe,* 100 B.R. at 855.

**26.** 11 U.S.C. § 522(b)(2)(A) states in part:
(b) Notwithstanding section 541 of this title, an individual debtor may exempt from

property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... ·Such property is—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section....

states to opt out of the federal exemptions and create state law exemptions, the state statute is elevated to the status of federal law. Therefore, the statute is not preempted under 29 U.S.C. §§ 1144(a) and (d). The Verwers claim they may exempt their interest in their plan not due to the Utah statute alone, but because section 522(b)(2) allows for and incorporates by reference a state statutory exemption. They support their position by arguing the language of 29 U.S.C. § 1144(d) that states "[n]othing in this title shall be construed to ... invalidate, impair, or supersede any law of the United States." The Verwers also cite to *Shaw* arguing that if a federal law is intertwined sufficiently with state law so that preemption of a state law would "impair" the federal law, section 514(d) saves the state law from preemption.

These arguments have recently been rejected by other courts considering the same issues. Addressing the debtor's contentions, the court in *Weeks* stated:

> However, despite the potential for the Debtor's argument, we cannot find and have not been offered any precedent for a determination that this state law should be or can be afforded the effect of federal law. The theory that the state exemption statutes are somehow incorporated within the Bankruptcy Code due to the ability of states to opt out of the exemptions contained within the Code is interesting from a State's rights viewpoint but is simply unfounded.

*Weeks*, 106 B.R. at 263. In *Siegel v. Swaine (In re Siegel)*, 105 B.R. 556 (D.Ariz.1989), the court held that just because Congress allowed states to opt out of the federal exemptions, it did not mean Congress intended to adopt the ensuing state exemptions as federal law. In fact, the court stated that to hold that preemption does not apply to the state exemption "would permit the state to exclude property from the estate, contrary to the general policy of Congress." *Siegel*, 105 B.R. at 562. In *Heitkamp v. Dyke (In re Dyke)*, 99 B.R. 343, 349 (Bankr.S.D.Tex.1989) the court addressed whether section 522(b)(2) incorporated by reference the state exemption laws. *Dyke* reasoned section 522(b)(2)

was neutral relative to any adoption or incorporation by reference of state law exemptions. *Dyke*, 99 B.R. at 351. To allow any result that would federalize state laws to which the Bankruptcy Code makes reference is "untenable in light of the legislative history of the Bankruptcy Code, the legislative intent of ERISA's preemption of state law and Supreme Court precedent." *Dyke*, 99 B.R. at 351.

There is no indication that Congress intended to incorporate state law exemptions into the Bankruptcy Code by means of section 522(b)(2). Such a result ignores the congressional intent to create for states a specific choice in exemption schemes.

## H. Preemption of Utah Code Ann. § 78-23-6(3) By ERISA

The trustees argue ERISA preempts not only Utah Code Ann. § 78-23-5(1)(j), but also Utah Code Ann. § 78-23-6(3). Section 78-23-6(3) attempts to implement an exemption similar to section 78-23-5(1)(j). Section 78-23-5(1)(j) exempts the funds accumulated in an ERISA qualified plan in their entirety and section 78-23-6(3) exempts only those funds held in a stock bonus, pension, profit sharing, annuity or similar plan to the extent reasonably necessary for the support of the individual or his dependents.

*Kerr* held that Utah Code Ann. § 78-23-6(3) exempted a debtor's ERISA qualified Keogh plans to the extent "reasonably necessary for the support of the debtors and their dependents". *Kerr*, 65 B.R. at 747. Initially, such an interpretation leads to the conclusion that the Plans in these cases are exempt to the extent allowed under section 78-23-6(3). *Kerr* however predated the *Mackey* decision and did not address the preemption issue; an issue now ripe for determination.

Martin and the Verwers assert that ERISA does not preempt Utah Code Ann. § 78-23-6(3) because it bears no specific reference to ERISA. They argue that section 78-23-6(3), in its general reference to pension plans, treats ERISA qualified plans the same as pension plans not qualified

under ERISA. They assert preemption is only appropriate in situations where the state statute singles out ERISA qualified plans or is specifically designed to affect such plans. Because section 78–23–6(3) does neither, they argue it cannot be preempted by ERISA.

The argument for preemption of Utah Code Ann. § 78–23–5(1)(j) is that by enacting 29 U.S.C. § 1144(a) Congress expressly preempted the entire field of state regulation with respect to ERISA qualified plans. Therefore, the preemption of section 78–23–5(1)(j) is clearly appropriate because that section expressly refers to ERISA.

With respect to Utah Code Ann. § 78–23–6(3) there is no express reference to ERISA. However, the use of section 78–23–6(3) to protect "assets held, payments, and amounts payable under a stock bonus, pension, profit-sharing, annuity, or similar plan providing benefits" in an ERISA qualified plan necessarily causes the state statute to relate to an ERISA qualified plan by attempting to regulate or control the disposition of those assets. Even though section 78–23–6(3) does not specifically refer to ERISA, it does affect the existence of the monies in such a plan and as such "has a connection with or reference to such a plan". *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. The same analysis applicable to Utah Code Ann. § 78–23–5(1)(j) mandates that section 78–23–6(3) must fall to the preemptive power of ERISA.

The court recognizes that if a debtor holds assets in a non-ERISA qualified plan, the state statute would not be preempted and the debtor may be able to protect those assets from the reach of creditors. This inconsistency over the disparate treatment of qualified versus nonqualified plans may be troubling, but other benefits of qualified plans balance the appearance of inconsistent treatment. It is not this court's inclination to harmonize the effect of this apparent inconsistency by improper statutory interpretation.

*I. Other Federal Exemptions*

The debtors argue they still have exemptions available under other federal law not included in section 522(d) as provided in section 522(b)(2)(A). They contend ERISA is such other federal law and since 29 U.S.C. § 1056(d)(1) "provides that benefits provided under the plan may not be assigned or alienated", that section restricts the trustee from including the funds in the Plans as property of the estate. Essentially, the argument is that 29 U.S.C. § 1056(d)(1) establishes ERISA's own independent spendthrift trust through its anti-alienation and anti-assignment clauses. Assuming preemption, these particular ERISA restrictions on alienation remain effective in bankruptcy and are left as the only applicable nonbankruptcy law under section 541(c)(2).

Such an argument ignores that:

the Bankruptcy Code was, generally, intended to broaden the 'property of the estate' available to creditors in bankruptcy and, specifically, intended to limit any exemption of pension funds. These policies based upon provisions of the Code would be frustrated were ERISA's anti-alienation and assignment provisions applied with a sweeping brush.

*Goff*, 706 F.2d at 587.

[A]s a matter of federal bankruptcy law, ERISA's restrictions on alienation must succumb to Congressional intent to include within the estate 'all legal or equitable interests of the debtor in property as of the commencement of the case.' [Citation omitted.] In no manner, does the Supreme Court's decision in *Mackey* overrule the central holding of *Goff* that ERISA's restraints on alienation are insufficient as a matter of bankruptcy law to avoid inclusion of a pension plan within the debtor's estate.

*Dyke*, 99 B.R. at 345–46. Several other circuits addressing this issue have also held ERISA is not applicable nonbankruptcy law for the purposes of section 541(c)(2). *Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1361 (9th Cir.1985); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir. 1985); and *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1273 (8th Cir.1984);

*but see In re Messing,* 114 B.R. 541 (Bankr. E.D.Tenn.1990) (reviewing 6th Circuit precedent). This court, in accordance with *Kerr,* 65 B.R. at 745–46, adopts the above analysis and concludes that the debtors' interests in the Plans are not exempt as "other federal law" under 11 U.S.C. § 522(b)(2)(A).

### SUMMARY

The funds in these Plans constitute property of these estates, unaffected by any exception for spendthrift trusts. The only avenue available to the debtors is the allowance of a valid exemption. 29 U.S.C. § 1144(a) preempts the entire field of regulation with respect to state statutes that relate to ERISA qualified plans. Both Utah Code Ann. §§ 78–23–5(1)(j) and 78–23–6(3) attempt to exempt funds in ERISA qualified plans from the bankruptcy estate. Therefore, they relate to and regulate ERISA qualified plans and are preempted under 29 U.S.C. § 1144(a). The argument that state exemptions should be elevated to federal law status is not compelling. Finally, the argument that section 522(b)(2)(A) creates an exemption under 29 U.S.C. § 1056(d)(1) also fails.

Therefore, it is hereby

ORDERED, that the funds in the Plans in these cases are included as property of the estates and not exempt under the state statutes,[27] and, it is further

ORDERED, that the trustees' objections to the debtors' claimed exemptions are allowed.

---

**27.** The Verwers have previously reserved the right to present evidence of any factual issue not determined.